IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| BARBARA ANN HARROD, | |
| Plaintiff, | 8:16-CV-441 |
| vs. | |
| NANCY A. BERRYHILL,[1] Acting Commissioner of the Social Security Administration, | MEMORANDUM AND ORDER |
| Defendant. | |

This matter is before the Court on the denial, initially and upon reconsideration, of plaintiff Barbara Ann Harrod's application for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. § 401 *et seq.* and supplemental social security income benefits under Title XVI of the Act, 42 U.S.C. § 1381 *et seq.* The Court has considered the parties' filings and the administrative record. For the reasons discussed below, the Commissioner's decision will be affirmed.

FACTUAL BACKGROUND

Harrod based her claim of disability on hearing loss and rheumatoid arthritis, T40, but the issues on appeal relate almost exclusively to hearing loss, so the Court's discussion of Harrod's medical history will focus on her hearing. Harrod has a long history of hearing impairment. She had surgery performed in 1983—bilateral tympanomastoidectomies—but her hearing continued to decline. T44; T272. A series of hearing tests, apparently

---

[1] Nancy A. Berryhill is now the Acting Commissioner of Social Security and will be automatically substituted as a party pursuant to Fed. R. Civ. P. 25(d).

1

performed in association with Harrod's former employer, show profound hearing loss in her right ear, and varying but severe hearing loss in her left ear, as far back as November 2006. T252.

More recently, a hearing test in November 2011 showed a moderate to severe hearing loss in Harrod's left ear, and profound hearing loss in her right ear. T245. Her next annual test, in November 2012, resulted in the same findings. T259-60; see T252. She was seen for a physical examination in January 2013 because of cold symptoms, and her doctor observed that her left ear was impacted with cerumen, and that the tympanic membrane in her right ear appeared abnormal with history of trauma. T262-63. She was seen again in March, complaining of a blocked ear, which she characterized as "fullness" in her right ear. T264-65. Scarring of both tympanic membranes was noted. T264-65.

After applying for disability benefits, T158-61, Harrod was seen for another hearing test in September 2013. That test indicated deafness in Harrod's right ear, and hearing loss in her left ear. T246. Specifically, the audiometric evaluation revealed deafness in her right ear and moderate to severe sloping sensorineural hearing loss in her left ear. T272. Speech discrimination was 100 percent in her left ear, and her speech reception threshold was 60 dB in her left ear. T272; see T275. She had 100 percent word recognition in her left ear at 85 dB. T246. She denied any pain or drainage in her ears, and reported no fullness or pressure. T272.

Harrod's doctor, Thomas Connely, M.D., completed a hearing and speech impairment evaluation form, on which he noted tinnitus and established hearing loss. T271. He also noted an "average air conduction hearing threshold of 90 decibels or greater in the better ear" and an "average bone conduction hearing threshold of 60 decibels or greater in the better ear."

2

T271. He noted the absence, however, of "[a] word recognition score of 40 percent or less in the better ear determined using a standardized list of phonetically balanced monosyllabic words." T271. Connely also discussed hearing aid amplification with Harrod for her left ear, suggesting that she "would get significant benefit." T273.

In addition, two residual functional capacity evaluations were performed, based on review of Harrod's medical records, by consulting physicians Jerry Reed, M.D. and Steven Higgins, M.D. T68-72, T78-82. Both found that Harrod had communicative limitations, with limited hearing in both ears, and that Harrod should avoid even moderate noise exposure. T68-72, T78-82.

Harrod testified that she could no longer work because when she explained to employers that she was hard of hearing, "all the places wouldn't hire [her] because [she] had to communicate with people and that's one reason [she] was not able to find work." T41. But she had been working part-time, for 2½ hours per day 5 days per week, helping prepare and serve meals at a senior citizens' center. T41.

She had gotten a hearing aid in August 2014. T44. She said she still had difficulty hearing despite her hearing aid, and had tinnitus in her right ear. T51. She still relied on reading lips to understand people, "90 percent." T52. She had trouble understanding requests from supervisors and coworkers, and had to ask them to repeat themselves. T52. But when asked if the hearing aid had helped her at all, she said, "Oh, yes," and said that her hearing was "[g]reatly better" with the hearing aid. T51. She had been able, for the first time, to hear her cat meow. T51-52.

The administrative law judge (ALJ) presented the vocational expert with the following hypothetical:

> Let's assume, then, that we have someone such as Ms. Harrod, someone of the same age, education, and past work history both as to exertional as well as skill level, and then further that she could lift up to 10 pounds on a frequent basis . . . 10 pounds on an occasional basis, five pounds frequently, or anything below 10 pounds frequently, that in an eight-hour day she could sit for six hours, stand for two hours, and has unlimited use of the extremities, that she should be away from any type of loud noise, that she should also be in an environment away from concentrated fumes, [astringents], and away from exposure to heights and open machinery.

T59-60. The vocational expert opined that such a person could do Harrod's past relevant work as an assembler (assuming the use of earplugs), even if she consistently missed 1 to 2 days a month. T60-61

## PROCEDURAL BACKGROUND

Harrod applied for disability insurance benefits on July 2, 2013, when she was 58 years old. T158-61, T171. Her claim was denied initially on September 19, and upon reconsideration on January 21, 2014. T86-93. Harrod appealed and requested a hearing from an ALJ. T104. The ALJ held a hearing on April 16, 2015. T36. In a decision dated July 16, the ALJ found that Harrod was not disabled as defined under 42 U.S.C. §§ 416(i) or 423(d), and therefore not entitled to benefits. T22-31.

## SEQUENTIAL ANALYSIS

Disability, for purposes of the Social Security Act, is defined as the inability to engage in any substantial gainful activity by reason of any

medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. §§ 416(i) & 423(d).

To determine whether a claimant is entitled to disability benefits, the ALJ performs a five-step sequential analysis. 20 C.F.R. § 404.1520(a)(4). At step one, the claimant has the burden to establish that she has not engaged in substantial gainful activity since her alleged disability onset date. *Cuthrell v. Astrue*, 702 F.3d 1114, 1116 (8th Cir. 2013). If the claimant has engaged in substantial gainful activity, she will be found not to be disabled; otherwise, at step two, she has the burden to prove she has a medically determinable physical or mental impairment or combination of impairments that significantly limits her physical or mental ability to perform basic work activities. *Id.*

At step three, if the claimant shows that her impairment meets or equals a presumptively disabling impairment listed in the regulations, she is automatically found disabled and is entitled to benefits. *Id.* Otherwise, the analysis proceeds to step four. But first, the ALJ must determine the claimant's residual functional capacity (RFC), which is used at steps four and five. 20 C.F.R. § 404.1520(a)(4). A claimant's RFC is what she can do despite the limitations caused by any mental or physical impairments. *Toland v. Colvin*, 761 F.3d 931, 935 (8th Cir. 2014). At step four, the claimant has the burden to prove she lacks the RFC to perform her past relevant work. *Cuthrell*, 702 F.3d at 1116. If the claimant can still do her past relevant work, she will be found not to be disabled; otherwise, at step five, the burden shifts to the Commissioner to prove, considering the claimant's RFC, age, education, and work experience, that there are other jobs in the national

economy the claimant can perform. *Id.*; *Jones v. Astrue*, 619 F.3d 963, 971 (8th Cir. 2010).

## THE ALJ'S FINDINGS

At step one, the ALJ found that Harrod had not engaged in substantial gainful activity since her alleged disability date of May 13, 2013. T24. At step two, the ALJ found that Harrod had two severe impairments: rheumatoid arthritis and hearing loss. T25. But at step three, the ALJ found that Harrod's impairments did not meet or equal a presumptively disabling impairment. T25. So, the ALJ determined Harrod's RFC as follows:

> The claimant can lift 10 pounds on an occasional basis and anything below 10 pounds frequently. In an 8-hour day, she can sit for 6 hours and stand for 2 hours. The claimant has unlimited use of her extremities. She should be away from any type of loud noise. The claimant should also be in an environment where she is away from concentrated fumes, and astringents. She needs to be away from exposure to heights and open machinery. The claimant needs to wear ear plugs if in very noisy conditions.

T25. Based on that RFC, at step four, the ALJ found that Harrod could perform her past relevant work. T30. Accordingly, the ALJ found that Harrod was not disabled. T30-31.

On July 22, 2016, the Appeals Council of the Social Security Administration denied Harrod's request for review. T1. Harrod's complaint (filing 1) seeks review of the ALJ's decision as the final decision of the Commissioner under sentence four of 42 U.S.C. § 405(g).

## STANDARD OF REVIEW

The Court reviews a denial of benefits by the Commissioner to determine whether the denial is supported by substantial evidence on the record as a whole. *Teague v. Astrue*, 638 F.3d 611, 614 (8th Cir. 2011) (citing 42 U.S.C. § 405(g)). Substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the conclusion. *Id*. The Court must consider evidence that both supports and detracts from the ALJ's decision, and will not reverse an administrative decision simply because some evidence may support the opposite conclusion. *Perkins v. Astrue*, 648 F.3d 892, 897 (8th Cir. 2011). If, after reviewing the record, the Court finds it is possible to draw two inconsistent positions from the evidence and one of those positions represents the ALJ's findings, the Court must affirm the ALJ's decision. *Id*.

## DISCUSSION

Harrod presents two issues to the Court for review: that (1) the ALJ erred in failing to account for all the limitations supported by the evidence related to Harrod's hearing loss, and (2) the ALJ's credibility determination is not supported by substantial evidence. Filing 14 at 1. The Court finds no merit to either contention.

### LIMITATIONS RELATED TO HEARING LOSS

Harrod begins by arguing that "[t]he ALJ found that Harrod's hearing loss was a severe impairment, yet he did not include any limitations that actually indicated the extent to which Harrod was able to hear." Filing 14 at 7. So, she contends, "the RFC is not an accurate reflection of Harrod's maximum residual functional capacity and is not supported by substantial evidence." Filing 14 at 7.

But Harrod does not explain, even now, what limitations she believes should have been included. Nor could she make such an argument persuasively, because there is no basis in the record for limitations beyond those the ALJ employed. An ALJ determines a claimant's RFC based on all the relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of her limitations. *Combs v. Berryhill*, 878 F.3d 642, 646 (8th Cir. 2017). And because a claimant's RFC is a medical question, an ALJ's assessment of it must be supported by some medical evidence of the claimant's ability to function in the workplace. *Id.*

"In the typical Social Security disability case, the administrative record includes one or more opinions by the claimant's treating physician(s) as to the impact of impairments on [her] RFC." *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016). There were no such opinions here, at least with respect to Harrod's hearing loss. But "[i]n the absence of medical opinion evidence, medical records prepared by the most relevant treating physicians can provide affirmative medical evidence supporting the ALJ's residual functional capacity findings." *Id.* (cleaned up).

The ALJ had those records in front of him—and they showed that while Harrod's hearing loss had gotten somewhat worse between 2006 and 2013, that decline was not precipitous. *See* T252. Harrod herself reported that her hearing had "really started going downhill" after her surgery in 1983. T44. But Harrod had maintained her past relevant work until 2013. T181. She was, in fact, working part time at the time of the administrative hearing, T41, and there is nothing to suggest that her ability to perform part-time but not full-time work was related to hearing loss.

Moreover, all the medical evidence of Harrod's hearing loss preceded her acquisition of a hearing aid—which, she said, had greatly benefited her. T51. She did say that her hearing was still impaired, even with her hearing aid—but there is nothing in the record to suggest that her ability to maintain employment was limited by her self-reported need to ask her supervisors or coworkers to repeat themselves. *See* T52.

Harrod also argues that "the ALJ improperly substituted his lay opinion for that of a medical source by attempting to interpret the audiometric testing on his own." Filing 14 at 8. Harrod points to the ALJ's discussion of the audiometric testing, and suggests that "the ALJ relied on his own—likely inaccurate—interpretation of this testing in an attempt to minimize the severity of Harrod's hearing loss." Filing 14 at 8.

But the Court is unsure what else the ALJ should have been expected to rely on. Harrod is, in effect, arguing that the ALJ erred in relying on evidence that Harrod herself offered. If, indeed, it had been error to consider that evidence without an expert medical opinion to interpret it, then Harrod invited the error by offering the evidence without such an opinion. But the ALJ did not err. The ALJ described the evidence accurately, and the ALJ's statement that Harrod "only" had moderate to severe sloping sensorineural hearing loss of her left ear—Harrod's proof of the ALJ's misinterpretation of the evidence—is easily read, in context, as contrasting her partial left ear hearing loss with her total right ear hearing loss. *See* T28. Simply put, Harrod cannot prove that the ALJ misinterpreted the evidence by pointing to the ALJ's wholly accurate summary of the evidence.

In sum, any "limitation" the ALJ could have included in Harrod's RFC, based on hearing loss, would have been sewn from whole cloth, and not grounded in the evidence. Given the standard of review, the Court can say

9

that there is at least substantial evidence supporting the ALJ's decision not to include such a limitation.

CREDIBILITY DETERMINATION

Harrod also challenges the ALJ's credibility determination, but on relatively narrow grounds. Filing 14 at 10. The ALJ found that Harrod was "not a fully credible witness," based on her daily activities and the "routine and conservative" nature of her arthritic pain management regimen. T29-30. And, the ALJ noted, she had presented no third-party corroboration of her testimony, and had received unemployment benefits after her alleged date of disability, "which mean[t] she was asserting that she was willing, able, and ready to return to work." T30.

Harrod's argument is threefold, but her first two contentions can be disposed of together. Harrod contends that the ALJ erred in relying on her daily activities as part of an adverse credibility determination when they are "inapplicable to the primary impairment that Harrod alleges makes her disabled: her hearing loss." Filing 14 at 10. And, she says, the ALJ "did not indicate what greater treatment Harrod could have sought or obtained for her hearing loss such that her treatment history undermined the credibility of her allegations regarding its severity." Filing 14 at 10-11.

But Harrod also based her disability claim on her rheumatoid arthritis. *See* T41. Harrod's daily activities, and the limited treatment that her condition apparently required, were obviously relevant to her claim that she was disabled in part by arthritic pain. *E.g. Spradling v. Chater*, 126 F.3d 1072, 1075 (8th Cir. 1997). And the ALJ quite specifically explained that his credibility determination was based on the fact that Harrod was, at times, "not even taking over-the-counter medications to help alleviate her alleged pain symptoms." T30. Nor is the Court aware of any authority suggesting

that an ALJ's credibility determination should be discretely made with respect to each claimed impairment: when a witness's credibility is impeached on one issue, it is entirely fair for the factfinder to question the witness's testimony on other matters as well.

Finally, Harrod objects to the ALJ's reference to Harrod's receipt of unemployment benefits as undermining her credibility. Filing 14 at 11. "[T]he ALJ," she argues, "did not indicate whether the state in which Harrod resides requires a certification that she can specifically work full-time or whether a certification that she could return to part-time work would be sufficient." Filing 14 at 11-12.

It is, however, well-established that seeking and obtaining unemployment benefits evinces a willingness and ability to work, which contradicts a claim of disability. *See Milam v. Colvin*, 794 F.3d 978, 984 (8th Cir. 2015); *Smith v. Colvin*, 756 F.3d 621, 625 (8th Cir. 2014). Nebraska law, in fact, premises an unemployed individual's eligibility for benefits on the individual's ability and availability for work. Neb. Rev. Stat. § 48-627(3)(a). Applying for part-time work is only sufficient "if the majority of the weeks of work in an individual's base period include part-time work," § 48-627(3)(c), and that does not appear to have been the case here, T181-82. The ALJ did not err in considering Harrod's receipt of unemployment benefits as relevant to her credibility.

## CONCLUSION

The Court finds no merit to Harrod's claimed errors. Accordingly, the Commissioner's decision to deny benefits will be affirmed.

IT IS ORDERED:

1. The Clerk of the Court is directed to substitute Acting Commissioner of Social Security Nancy A. Berryhill as the defendant.

2. The Commissioner's decision is affirmed.

3. The plaintiff's complaint is dismissed.

4. The parties shall bear their own costs.

5. A separate judgment will be entered.

Dated this 13th day of February, 2018.

BY THE COURT:

John M. Gerrard
United States District Judge